1  Mitchell J. Popham (SBN: 126194)
   mpopham@lockelord.com
2  Susan J. Welde (SBN: 205401)
   swelde@lockelord.com
3  **LOCKE LORD BISSELL & LIDDELL LLP**
   300 South Grand Avenue, Eighth Floor
4  Los Angeles, CA 90071-3119
   213.485.1500
5

6  Attorneys for Defendant
   **GREAT AMERICAN**
7  **LIFE INSURANCE COMPANY**

8

FILED

2007 OCT 29 PM 3: 09

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**BY FAX**

| | |
|---|---|
| CATHERINE BECK, an Individual, | CASE NO. **'07 CV 2055 JM** |
| Plaintiff, | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)** |
| vs. | |
| GREAT AMERICAN LIFE INSURANCE COMPANY, an Ohio Corporation; and DOES 1 through 20, Inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**POR**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant Great American Life Insurance Company hereby removes to this Court the state court action described below.

1.    On September 6, 2007, an action was commenced in the Superior Court of the State of California in and for the County of San Diego entitled Catherine Beck, Plaintiff, vs. Great American Life Insurance Company, and Does 1 through 20, Defendants, as Case Number 37-2007-00074401-CU-IC-CTL. A copy of the complaint is attached hereto as Exhibit "A."

2.    The first date upon which defendant Great American Life Insurance Company (hereafter "GALIC") received a copy of the said complaint was September

1

[NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)]

*Locke Lord Bissell & Liddell LLP*
*300 South Grand Avenue, Eighth Floor*
*Los Angeles, CA 90071-3119*

ORIGINAL

1    28, 2007 when GALIC was served with a copy of the complaint and a summons from

2    the state court. A copy of the summons is attached hereto as Exhibit "B."

3        3.    This action is a civil action of which this Court has original jurisdiction

4    under 28 U.S.C. § 1332 and is one which may be removed to this Court by GALIC

5    pursuant to the provisions of 28 U.S.C. § 1441(b), this being a civil action between

6    citizens of different states with the matter in controversy exceeding the sum of

7    $75,000, exclusive of interest and costs, because plaintiff Catherine Beck ("Plaintiff")

8    asserts compensatory damages in her complaint in the amount of $250,000.

9        4.    GALIC is informed and believes that Plaintiff was at all applicable time

10   periods, and still is, a citizen of the State of California. GALIC was, at the time of the

11   filing of this action, and still is, a subsidiary of Great American Financial Resources,

12   Incorporated ("GAFRI"), domiciled in the State of Ohio and having its principal place

13   of business in the State of Ohio. GAFRI is a corporation incorporated under the laws

14   of the State of Delaware, having its principal place of business in the State of Ohio.

15       5.    GALIC answered Plaintiff's complaint in this action by way of general

16   denial which was filed with the Superior Court of the State of California for the

17   County of San Diego on the morning of October 29, 2007. Due to the wildfires and

18   declared state of emergency, San Diego Superior Court was closed on October 24, 25

19   and 26, 2007 and was not accepting any filings. For this reason, GALIC was unable

20   to file its Answer on October 24, 25 or 26, 2007. A copy of GALIC's answer is

21   attached hereto as Exhibit "C."

22       6.    To the best of GALIC's knowledge, no other defendant has been named

23   or served with process herein.

24

25

26

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

2

[NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)]

Dated: October 29, 2007

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP

By: *Susan Welde*

Mitchell J. Popham
Susan J. Welde
Attorneys For Defendant **GREAT AMERICAN LIFE INSURANCE COMPANY**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

[NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)]

# EXHIBIT A

1   William E. O'Nell, Esq. (185756)
    **LAW OFFICE OF WILLIAM E. O'NELL**
2   101 West Broadway, Suite 810
    San Diego, CA 92101
3   Telephone: (619) 702-7636
    Facsimile: (619) 702-7639
4
    Attorney for Plaintiff CATHERINE BECK
5

6

7                                          SEP  6 '07 PM 1:29

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9       IN AND FOR THE COUNTY OF SAN DIEGO, CENTRAL DISTRICT

10

11   CATHERINE BECK, an Individual,       **CASE NO.:** 37-2007-00074401-CU-IC-CTL

12              Plaintiff,                 **COMPLAINT FOR:**

13   vs.                                   **(1)  DECLARATORY RELIEF;**
                                           **(2)  BREACH OF CONTRACT;**
14   GREAT AMERICAN LIFE INSURANCE         **(3)  UNFAIR BUSINESS**
     COMPANY, an Ohio Corporation; and          **PRACTICES PURSUANT TO**
15   DOES 1-20, Inclusive,                      **CALIFORNIA BUSINESS AND**
                                                **PROFESSIONS CODE**
16              Defendants.                      **SECTION 17200, *ET SEQ*; AND**
                                           **(4)  RECISION OF CANCELLATION**
17                                              **OF POLICY**

18                                         **DEMAND FOR JURY TRIAL**

19                    **DEMAND FOR JURY TRIAL**

20       Plaintiff, Catherine Beck ("Plaintiff"), demands trial by Jury.

21                         **COMPLAINT**

22       Plaintiff, Catherine Beck, for causes of action against the Defendants, and each of them,

23   alleges:

24                          **PARTIES**

25       1.   Plaintiff, at all times relevant herein, is and was a competent adult residing in San

26   Diego County, California.

27       2.   Plaintiff is informed and believes that, at all times relevant herein, Defendant,

28   Great American Life Insurance Company ("Great American"), is and was an Ohio Corporation

                        **COMPLAINT**                    *Beck v. Great American Life Ins. Co.*
                             1

                        Exhibit ___A___, Pg. __4__

1    doing business in San Diego County, California.

2        3.      The true names and capacities of those defendants sued herein as DOES 1 through

3    20, inclusive, whether individual, corporate, associate, representative or otherwise, are unknown

4    to Plaintiff who sues these defendants by their fictitious names. When the DOE defendants' true

5    names and capacities and their actual involvement in the matters alleged herein are fully

6    ascertained, Plaintiff will amend this Complaint to accurately reflect the same.

7        4.      Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously

8    named defendants designated hereunder as a DOE is responsible in some manner for the

9    occurrences alleged herein, and that Plaintiff's damages as herein alleged were proximately

10   caused or contributed to by their conduct.

11       5.      Plaintiff is informed and believes, and thereon alleges, that at all times relevant

12   herein, each of the defendants mentioned was the agent, employee, partner, joint venturer, alter

13   ego, and/or co-conspirator of one or more of the remaining defendants, and in doing the acts

14   alleged herein, was acting within the purpose, course and scope of such agency, employment,

15   partnership, joint venturer and/or conspiracy, and with the consent, permission and/or ratification

16   of one or more of the remaining defendants.

17                                          **VENUE**

18       6.      Venue and jurisdiction are proper in this Court because the transactions in this

19   case took place in San Diego County, and the wrongful acts and damages resulting from the

20   wrongful acts took place in San Diego County.

21                                 **GENERAL ALLEGATIONS**

22       7.      On or about December 15, 1998, Olivia Y. Castellanos (deceased) purchased a

23   life insurance policy (Policy No. EM9802676) from Defendant, Great American ("the Policy").

24   A copy of the Policy (redacted to protect private information) is attached hereto as **Exhibit "A"**

25   and is incorporated herein by reference.

26       8.      For several years thereafter Ms. Castellanos paid her premiums and kept the

27   Policy in force.

28       9.      Ms. Castellanos listed her mother, Catherine Beck (Plaintiff), as her beneficiary

---

**COMPLAINT**
2

*Beck v. Great American Life Ins. Co.*

Exhibit _A_, Pg. _5_

1  on the Policy. However, she did not tell her mother about the Policy until January 17, 2006.

2      10.    As of the later part of 2005, Ms. Castellanos lived with her mother at her mother's

3  home, and also maintained her own P.O. Box for her mail. Ms. Castellanos provided that P.O.

4  Box as her address for notices concerning the Policy.

5      11.    Near the end of 2005, Ms. Castellanos became very ill, very quickly. She was

6  hospitalized for extreme and systemic maladies which turned out to be the symptoms of cancer.

7  From December 6th through December 15th and again from December 17th through December 21st

8  she was in the Intensive Care Unit. She remained hospitalized through January 8, 2006 ("2005-

9  06 Hospitalization"). She was released for a few days and then returned to the Hospital.

10      12.    During the course of her 2005-06 Hospitalization, Ms. Castellanos was given a

11  slew of medications (including, among others, Ativan and Prozac). Ativan affects mental

12  functioning and causes memory loss and sedation. In Ms. Castellanos' case, it caused severe

13  confusion. Ms. Castellanos became severely depressed and the Prozac made those symptoms

14  and the accompanying anxiety even worse. At various times during her 2005-06 Hospitalization

15  she was under complete sedation.

16      13.    For much of her 2005-06 Hospitalization, Ms. Castellanos was unable to

17  communicate with her family in any substantive or sophisticated manner. Ms. Castellanos

18  underwent extended periods of extreme depression and anxiety and extended periods of altered

19  mental status which included hallucinations and non-responsiveness.

20      14.    During the course of Ms. Castellanos' 2005-06 Hospitalization, Great American

21  sent her a premium notice for her life insurance Policy. The due date for the premium was

22  December 15, 2005. The notice was sent to her P.O. Box. None of Ms. Castellanos' family were

23  aware of the premium notice. Because Ms. Castellanos was in the hospital, she was unable to

24  check her mail, and since she was in the process of dying and in an altered mental state, she did

25  not have the presence of mind to have someone find and pay the premium notice. She did not

26  have the capacity to understand the implications of her inaction.

27      15.    Ms. Casetellanos was temporarily discharged from the hospital on January 8th.

28  However, even at home she was hysterical, hallucinating, fevered and, mostly, completely out of

1    it. While at home she was in no better mental state than when she was at the hospital. She did

2    not have the capacity to understand the implications of her actions or inactions.

3          16.    On or about January 16th or 17th of 2006, one of Ms. Castellanos' relatives got her

4    mail from her P.O. Box and she received the premium notice. Ms. Castellanos' family

5    immediately helped her send in a double premium payment. This is when her family first learned

6    of the insurance Policy.

7          17.    Great American ostensibly rejected the premium as late but never returned

8    Ms. Castellanos' check. Instead, the company sent someone else's check to her.

9          18.    Great American insisted that Ms. Castellanos re-apply for the Policy if she wanted

10   coverage. Ms. Castellanos, with the help of her family, submitted her application for

11   reinstatement in which she documented her period of incapacity. Great American denied the

12   application saying the denial was based on her medical condition. The medical records provided

13   to Great American showed the extent of Ms. Castellanos' illness and that she was likely to die

14   soon.

15         19.    On or about April 2, 2006, while under care at Scripps Green Hospital,

16   Ms. Castellanos died from the disease which had caused her 2005-06 Hospitalization.

17         20.    As the beneficiary of the Policy, Catherine Beck submitted a claim for benefits

18   under the Policy. In that submission, Ms. Beck provided Great American with the facts

19   concerning Ms. Castellanos' incapacity and offered to pay any back premium owed. Great

20   American denied that claim.

21         21.    Plaintiff is informed and believes that: It is well known in the life insurance

22   industry–and to Great American–that death is often preceded by a significant period of incapacity

23   due to a severe illness. And, that during their incapacity a significant number of insureds fail to

24   make a timely premium payment because of that incapacity. As a result, life insurance

25   companies escape liability for death benefits and reap an unearned windfall unless they toll the

26   time for payment during that incapacity. Unless the time for payment is tolled the insured's and

27   the beneficiaries' expectations are frustrated.

28         22.    Great American netted an inequitable windfall due to Ms. Castellanos' incapacity

**COMPLAINT**
4

*Beck v. Great American Life Ins. Co.*

Exhibit <u>A</u>, Pg. <u>7</u>

based on its unwillingness to interpret its policy language in harmony with California Civil Code ("CC") section 39, California Probate Code ("Prob. Code") section 812 and in a conscionable matter consistent with known actuarial issues.

23. Pursuant to California Civil Code section 39:

(a) A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before the incapacity of the person has been judicially determined, is subject to rescission, as provided in Chapter 2 (commencing with Section 1688) of Title 5 of Part 2 of Division 3.

(b) A rebuttable presumption affecting the burden of proof that a person is of unsound mind shall exist for purposes of this section if the person is substantially unable to manage his or her own financial resources or resist fraud or undue influence. Substantial inability may not be proved solely by isolated incidents of negligence or improvidence.

24. Pursuant to California Probate Code section 812:

Except where otherwise provided by law, including, but not limited to, Section 813 and the statutory and decisional law of testamentary capacity, a person lacks the capacity to make a decision unless the person has the ability to communicate verbally, or by any other means, the decision, and to understand and appreciate, to the extent relevant, all of the following:

(a) The rights, duties, and responsibilities created by, or affected by the decision.

(b) The probable consequences for the decisionmaker and, where appropriate, the persons affected by the decision.

(c) The significant risks, benefits, and reasonable alternatives involved in the decision.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

25. Plaintiff realleges and incorporates herein by reference, all of the factual allegations contained in paragraphs 1-24, inclusive, of this Complaint.

26. Ms. Castellanos entered into a written contract for insurance with Great American (the Policy) which provided a benefit of $250,000 to Plaintiff upon Ms. Castellanos' death. The parties are in conflict as to the proper interpretation of the Agreement in light of the facts as described herein.

COMPLAINT
5

*Beck v. Great American Life Ins. Co.*

Exhibit A , Pg. 8

27.  It is Plaintiff's position that the Agreement must be read to fulfill the mutual expectations of the parties–and to do that the deadline for tendering the renewal premium must be tolled during decedents period of incapacity due to the disease which ultimately caused her death. The insurance Policy was intended to provide benefits to decedent's beneficiary upon her death. Death is often and regularly preceded by severe and protracted illness during which, the dying person is incapacitated. Such was the case for Ms. Castellanos. And, Ms. Castellanos' case was not unique. Incapacity caused by a terminal illness (and its treatment) which is slowly killing a person, is to be expected by the insurance industry. If the Policy is not read to toll the premium payment deadline for a reasonable time during decedent's incapacity due to her terminal illness, then the contract provides an unconscionable and regularly recurring escape hatch for Great American to receive premiums but not have to pay benefits.

28.  Defendant disagrees with Plaintiff's interpretation of the Policy.

29.  By reason of the foregoing, an actual controversy has arisen and a real dispute now exists between Plaintiff and Defendants, and each of them, concerning their respective rights and duties. A declaration of rights and duties is necessary and appropriate at this time in order that the Plaintiff may ascertain her rights and duties because no other adequate and expeditious remedy exists by which the rights of the parties may be determined.

### SECOND CAUSE OF ACTION

#### (Breach of Contract)

30.  Plaintiff realleges and incorporates herein by reference, all of the factual allegations contained in paragraphs 1-24, inclusive, of this Complaint.

31.  Ms. Castellanos entered into a written contract for insurance with Great American–the Policy to which Plaintiff is a third party and intended beneficiary.

32.  Ms. Castellanos died. Therefore, Plaintiff is entitled to benefits under the Policy.

33.  Defendants breached the Agreement by, among other things, failing to pay the death benefit to Plaintiff.

34.  Defendants are estopped from asserting that Ms. Castellanos failed to pay the premium because they never returned her payment to her.

1    35.    Defendants waived the right to refuse acceptance of Ms. Castellanos' late

2    premium payment by failing to return her payment to her.

3    36.    There is implied in every contract, a covenant of good faith and fair dealing that

4    each party will not do anything that will deprive the other party their benefits of the contract. By

5    refusing to recognize and account for Ms. Castellanos' incapacity and by refusing to toll the time

6    in which premiums would be accepted to accommodate that incapacity, and by refusing to pay

7    Plaintiff's claim, Great American has breached the contract. In so breaching the Policy contract,

8    Great American has obtained a windfall.

9    37.    Plaintiff performed all conditions, covenants and promises required on her part to

10    be performed in accordance with the terms and conditions of the insurance contract except for

11    those conditions which were prevented or excused by Defendants' breaches and/or those which

12    are curable as described herein.

13    38.    As a result of Defendants' breaches, Plaintiff is owed damages in an amount to be

14    determined according to proof, including but not limited to, the Policy death benefits, and

15    interest on that amount since the date of Ms. Castellanos' death.

16    **THIRD CAUSE OF ACTION**

17    **(Unfair Business Practices Pursuant to Business and Professions Code § 17200, *et seq.*)**

18    39.    Plaintiff realleges and incorporates herein by reference, all of the factual

19    allegations contained in paragraphs 1-38, inclusive, of this Complaint.

20    40.    The actions of Defendants, and each of them, as alleged above constitute

21    unlawful, unfair or fraudulent business acts and/or practices pursuant to the California Unfair

22    Competition Act found in Business & Professions Code ("Bus. & Prof. Code") section 17200, *et.*

23    *seq.*

24    41.    Defendants were unjustly enriched in the amount of the Policy death benefit, and

25    that amount should be restored to Plaintiff as the beneficiary under the Policy.

26    42.    Plaintiff brings this action pursuant to Bus. & Prof. Code section 17200, *et seq.*

27    for restitution.

28    / / /

**COMPLAINT**

7

*Beck v. Great American Life Ins. Co.*

## FOURTH CAUSE OF ACTION

### (Recision of Cancellation of Policy)

43.     Plaintiff realleges and incorporates herein by reference, all of the factual allegations contained in paragraphs 1-24, inclusive, of this Complaint.

44.     Ms. Castellanos entered into a written contract for insurance with Great American—the Policy which provided a benefit of $250,000 to Plaintiff upon Ms. Castellanos' death.

45.     Ms. Castellanos died.  And, if the Policy was in force at that time, Plaintiff is entitled to payment of the death benefit.

46.     Ms. Castellanos was incapacitated during her 2005-06 Hospitalization.  Therefore, she was unable to make a decision to cancel the Policy by failing to pay on time.  Great American, however, treated Ms. Castellanos' actions as those of a competent person and cancelled the Policy when it did not receive the premium payment on time.

47.     Ms. Castellanos' decision to not pay her premium must be rescinded because she was not competent pursuant to CC section 39 and Prob. Code section 812 to make that decision.

48.     Plaintiff offers to pay any and all back premiums owed after recision of the cancellation so that the Policy is in force as of the date of death and the death benefits may be paid.

WHEREFORE, Plaintiff prays for judgment herein against Defendants and each of them as follows:

For the First Cause of Action:

1.     For a declaration by the Court of the respective rights and duties of the parties concerning the Policy and specifically that the premium payment sent by decedent was timely and the Policy was in force so as to provide death benefits to Plaintiff as the beneficiary.

For the Second Cause of Action

1.     For compensatory damages in an amount according to proof and more than the minimum jurisdiction of this Court in an amount estimated to be in excess of $250,000; and

2.     Pre-judgment interest at the legal rate.

1    <u>For the Third Cause of Action</u>

2        1.    Restitution and/or disgorgement of money obtained through unlawful, unfair

3    and/or fraudulent business practices pursuant to Bus. & Prof. Code section 17200.

4    <u>For the Fourth Cause of Action</u>

5        1.    For recision of Great American's cancellation of the Policy.

6    <u>For All Causes of Actions</u>

7        1.    For costs of suit incurred herein; and

8        2.    For such other and further relief as the Court may deem proper.

9    DATED: _9/5/07_         **LAW OFFICE OF WILLIAM E. O'NELL**

10

11               By: _____

12                   William E. O'Nell, Esq. Attorney for
                Plaintiff, Catherine Beck

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**
9

*Beck v. Great American Life Ins. Co.*

Exhibit _A_, Pg. _12_

# GREAT AMERICAN® LIFE
# INSURANCE COMPANY

## Built on relationships and focused on service.



**GREAT AMERICAN®**
LIFE INSURANCE COMPANY

## LIFE DIVISION

Exhibit _A_, Pg. _13_



### GREAT AMERICAN LIFE INSURANCE COMPANY
A Stock Insurance Company

Domicile Address: 580 Walnut Street, Cincinnati, Ohio 45202
Life Division: P.O. Box 5416, Cincinnati, Ohio 45201-5416

## TERM LIFE INSURANCE TO AGE 95

**Insurance payable if the insured dies while this policy is in force.
Premiums payable while the insured is alive until the Expiration Date.
This policy is convertible to age 75.
This policy is nonparticipating.**

**GREAT AMERICAN LIFE INSURANCE COMPANY AGREES to:** 1) pay the Proceeds to the beneficiary on receipt at its Life Administration Office of proof that the insured died while this policy was in force; and 2) provide the other rights and benefits according to the terms and conditions of this policy.

### THIRTY DAY EXAMINATION-RIGHT TO CANCEL

**If the Policyowner is not satisfied with this policy, it may be cancelled on or before the 30th day after its receipt by delivering it to our Life Administration Office or to the agent through whom it was purchased. Immediately upon such delivery or mailing, this policy will be treated as if it never existed. Any premium paid will be refunded within 10 days after we have received this policy.**

This policy is a legal contract between the Policyowner and Great American Life Insurance Company.

## PLEASE READ YOUR POLICY CAREFULLY!

Signed for Great American Life Insurance Company on the Policy Date.

*Betty Kospinic*
**Secretary**

*James M. Martin*
**Executive Vice President**

PGRAT97NW1

Exhibit <u>A</u>, Pg. <u>14</u>

## TABLE OF CONTENTS

| SECTION | PAGE |
|---|---|
| Policy Specifications | 3 |
| Definitions | 4 |
| General Provisions | 5 |
| Contract | 5 |
| Modifications | 5 |
| Incontestability | 5 |
| Suicide | 5 |
| Protection of Payments | 5 |
| Age or Sex | 5 |
| End of Policy | 5 |
| Death Benefit Proceeds | 6 |
| Proceeds | 6 |
| Premiums and Reinstatement | 6 |
| Premium Payments | 6 |
| Premium Rates | 6 |
| Premium Payment Frequency | 6 |
| Grace Period | 6 |
| Reinstatement | 7 |
| Reserve Basis | 7 |
| Ownership and Beneficiary | 7 |
| Owner | 7 |
| Beneficiary | 7 |
| Change | 7 |
| Assignment | 7 |
| Exchange Provision | 8 |
| The New Policy | 8 |
| Conversion Provision | 8 |
| The New Policy | 8 |
| Payment of Benefits | 9 |
| Payment | 9 |
| Payment Options | 9 |
| Payment Frequency | 9 |
| Payment Option Rates | 9 |
| Basis of Values | 9 |
| Payment Option Guidelines | 10 |
| Minimum Income Tables | 10 |
| | 11 |

Notice

PGRAT97NW1

2

Exhibit _A_, Pg. _15_

## POLICY SPECIFICATIONS

### POLICY AND RIDERS

| FORM NUMBER | BENEFIT | FACE AMOUNT | COVERAGE ENDS |
|---|---|---|---|
| PGRAT97NW1 | TERM LIFE INSURANCE TO AGE 95 | $250,000 | DECEMBER 15, 2056 |

### ANNUAL PREMIUM SCHEDULE*

| POLICY YEAR | BASE POLICY | ACCIDENTAL DEATH | WAIVER OF PREMIUM | ADDITIONAL RIDERS + EXTRAS | TOTAL ANNUAL PREMIUM |
|---|---|---|---|---|---|
| 1 | $487.50 | | | | $487.50 |
| 2 | $487.50 | | | | $487.50 |
| 3 | $487.50 | | | | $487.50 |
| 4 | $487.50 | | | | $487.50 |
| 5 | $487.50 | | | | $487.50 |
| 6-30 | $487.50 | | | | $487.50 |

\*  PREMIUMS ARE GUARANTEED TO REMAIN AT THE ABOVE AMOUNTS FOR THE FIRST 30 YEARS.  AFTER THE 30th POLICY YEAR, THE PREMIUM FOR TERM LIFE INSURANCE AND ANY ATTACHED RIDERS MAY INCREASE, BUT WILL NEVER BE MORE THAN THE PREMIUMS SHOWN ON THE GUARANTEED MAXIMUM PREMIUM SCHEDULE.

PREMIUMS LISTED ABOVE INCLUDE AN $80.00 POLICY FEE.

PREMIUMS PAID OTHER THAN ANNUALLY ARE DETERMINED BY MULTIPLYING THE TOTAL ANNUAL PREMIUM BY A CERTAIN PERCENTAGE.  SUCH PERCENTAGES ARE:  .51(SEMIANNUAL); .26(QUARTERLY); AND .0875(MONTHLY BANK DRAFT).

| | | | |
|---|---|---|---|
| INSURED | OLIVIA Y CASTELLANOS | FACE AMOUNT | $250,000 |
| SEX AND AGE | FEMALE    37 | POLICY DATE | DECEMBER 15, 1998 |
| RATE CLASS | SELECT | EXPIRATION DATE | DECEMBER 15, 2056 |
| POLICY NUMBER | EM9802676 | | |

PGRAT97NW1

3

Exhibit A , Pg. 16

POLICY SPECIFICATIONS(Cont.'d)
GUARANTEED MAXIMUM PREMIUM SCHEDULE

RATE CLASS: SELECT

GUARANTEED MAXIMUM ANNUAL PREMIUMS AFTER THE ANNUAL PREMIUM SCHEDULE GUARANTEE PERIOD
ON THE SPECIFICATIONS PAGE ENDS.

| ATTAINED AGE | BASE POLICY | ACCIDENTAL DEATH | WAIVER OF PREMIUM | ATTAINED AGE | BASE POLICY | ACCIDENTAL DEATH |
|---|---|---|---|---|---|---|
| 67 | $10,112.50 | | | | | |
| 68 | $11,000.00 | | | | | |
| 69 | $11,950.00 | | | | | |
| 70 | $13,042.50 | | | | | |
| 71 | $14,350.00 | | | | | |
| 72 | $15,975.00 | | | | | |
| 73 | $17,950.00 | | | | | |
| 74 | $20,267.50 | | | | | |
| 75 | $22,900.00 | | | | | |
| 76 | $25,787.50 | | | | | |
| 77 | $28,887.50 | | | | | |
| 78 | $32,200.00 | | | | | |
| 79 | $35,817.50 | | | | | |
| 80 | $39,900.00 | | | | | |
| 81 | $44,567.50 | | | | | |
| 82 | $49,967.50 | | | | | |
| 83 | $56,187.50 | | | | | |
| 84 | $63,080.00 | | | | | |
| 85 | $70,630.00 | | | | | |
| 86 | $78,700.00 | | | | | |
| 87 | $87,337.50 | | | | | |
| 88 | $96,450.00 | | | | | |
| 89 | $106,175.00 | | | | | |
| 90 | $116,492.50 | | | | | |
| 91 | $127,617.50 | | | | | |
| 92 | $139,855.00 | | | | | |
| 93 | $153,800.00 | | | | | |
| 94 | $170,862.50 | | | | | |

Attained age means the Insured's Age at the beginning of the Policy Year.

The above base policy rates are based on the 1980 CSO Female Non-Smoker Mortality Table,
Age Nearest Birthday.

Premiums listed above include an $80.00 policy fee.

PGRAT97NWI                                          3-1

Exhibit _A_, Pg. _17_

## DEFINITIONS

When We use the following words, this is what We mean:

**You, your:** The owner of this policy.

**We, us, our:** Great American® Life Insurance Company.

**Insured:** The person whose life is insured under this policy, as shown on page 3.

**Face Amount:** The amount of insurance as shown on page 3 or any endorsement to page 3.

**Age:** The insured's age nearest birthday.

**Proceeds:** The amount we are obligated to pay under the terms of the policy when the Insured dies.

**Policy Date:** The date this policy takes effect, as shown on page 3. This is also the date from which Policy Anniversaries, Policy Years, and Policy Months are determined.

**Policy Anniversary:** The same day and month as your Policy Date for each succeeding year your policy stays in force.

**Policy Year:** A period of 12 months beginning each year on the month and day of the Policy Date.

**Policy Month:** A period beginning each month on the day of the Policy Date and ending the next month on the day preceding the day of the Policy Date.

**Expiration Date:** The date this policy is scheduled to end. This date is shown on page 3.

**Written Request:** A request in writing signed by You. All correspondence with us should be sent to our Life Administration Office: P.O. Box 5416, Cincinnati, Ohio 45201-5416. We may require that your policy be sent in with your request.

PGRAT97NW1

4

Exhibit _A_, Pg. _18_

# SECTION 1 — GENERAL PROVISIONS

**Contract**

The entire contract consists of this policy, the attached application, any supplemental applications and any riders, amendments or endorsements attached to this policy. All statements in the application will be representations and not warranties. No statement will be used to void this policy, or to contest a claim under it, unless it appears in the application.

**Modifications**

No agent has the authority to modify, change or waive any provision of this policy. A modification will only be valid if it is in writing and signed either by our President, a Vice President or the Secretary. We may request that you submit this policy for endorsement to show any change.

**Incontestability**

We will not contest this policy after it has been in force during the Insured's life for two years from the Policy Date.

If this policy is reinstated, this provision will be measured from the reinstatement date, and will be limited to material misrepresentations in the reinstatement application.

This provision does not apply to any provision for Waiver of Premiums or Accidental Death Benefits.

**Suicide**

If the Insured commits suicide while sane or insane within two years from the Policy Date, the Proceeds will not be paid. Instead, the beneficiary will receive an amount equal to the premium paid. If the law of the state where this policy is issued provides a shorter period, that law will govern.

**Protection of Payments**

Unless You and We agree to it, or unless otherwise provided in this policy, no one entitled to receive benefits under this policy may commute, pledge, sell or assign any part of such benefits. To the extent permitted by law, such benefits shall not be subject to the claims of any Payee's creditors or to legal process against any Payee.

**Age or Sex**

If the Insured's age or sex is misstated in the application, the Face Amount will be adjusted. The adjusted amount will be the Face Amount the premium paid would have provided based on the Insured's correct age and sex.

The age shown on page 3 is the Insured's age as of the Policy Date.

**End of Policy**

This policy will end on:

1. the date You request it ends;
2. the date the Insured dies;
3. the Expiration Date of Policy;
4. the date the grace period ends if sufficient premium has not been paid;
5. the conversion date; or
6. the exchange date;

whichever is earlier.

PGRAT97NW1

5

Exhibit A, Pg. 19

## SECTION 2 — DEATH BENEFIT PROCEEDS

**Proceeds**
If the Insured dies while this policy is in force and before the Expiration Date, We will pay the Proceeds to the beneficiary. The Proceeds are the sum of:

(a) the Face Amount; PLUS
(b) any insurance on the Insured's life that may be provided by riders to this policy; PLUS
(c) that portion of any premium paid which applies to a period beyond the month in which the Insured dies; LESS
(d) any unpaid premium if death occurs during the grace period.

We will pay the Proceeds to the beneficiary after We receive due proof of death and proper written claim. We will pay interest of not less than 3% per year from the date of death to the payment date, or any higher rate as required by law, from the date of death to the payment date.

## SECTION 3 — PREMIUMS AND REINSTATEMENT

**Premium Payments**
Premiums must be paid to us at our Life Administration Office. You may pay the first premium to us at our Life Administration Office or to our agent. If You would like a receipt for a premium payment, We will give You one upon request. You may choose the frequency of the payments. The first premium must be paid no later than when this policy is delivered. There is no insurance unless the first premium is paid while all statements and answers in all parts of the application remain correct. Each premium after the first is due on the first day of the Policy Month following the end of the period for which the preceding premium was paid. Each premium should be paid on or before the date it is due.

**Premium Rates**
The premium on the Policy Date is the premium shown in the Annual Premium Schedule. The premium will continue at this level for the period specified in the Annual Premium Schedule on Page 3. Subsequent premiums for term life insurance and any attached waiver of premium rider are guaranteed not to exceed the amounts shown on Page 3 during the periods indicated and the amounts computed from the table on Page 3-1 in subsequent years. We will give You written notice of each premium change. We will not change the premium more than once in any Policy Year. Any policy fee shown is in addition to your annual premiums as calculated from the tables.

Premiums are based on our expectations regarding such factors as mortality, investment earnings and expenses. Any change in the premium will be based on the prospective reevaluation of these factors. We will apply any change in the premium on a uniform basis to all insureds of the same age, sex and rate class whose policies are for the same amount of insurance and have been inforce for the same length of time. We will not change the premium or rate class because of changes in the Insured's health, occupation, or other risk factors after this policy takes effect.

**Premium Payment Frequency**
We will send premium notices according to the scheduled premium chosen. You can ask us to change the amount and frequency of the premium by sending us a Written Request. You may choose from annual, semi-annual, quarterly, or monthly bank draft.

Exhibit _A_, Pg. _20_

## SECTION 3 — PREMIUMS AND REINSTATEMENT (Cont'd.)

**Grace Period**

We will allow You 31 days from the premium due date to pay each premium after the first. This period is called the grace period. This policy will stay in force during the grace period. If You do not pay the premium due by the end of the grace period, this policy will terminate on the day after the grace period ends.

If the Insured dies during the grace period, We will pay the death benefit, but We will deduct from it the premium needed to cover the period from the beginning of the grace period to the end of the Policy Month in which the Insured died.

**Reinstatement**

If a grace period has ended without payment of required premium and this policy has terminated, You may apply to reinstate it. To reinstate this policy You must:

    (a) apply in writing within five years after the end of the grace period and before the Expiration Date;
    (b) provide due proof acceptable to us, that the Insured's health, occupation, and other risk factors have not materially changed since the Policy Date; and
    (c) pay all overdue premiums for the base policy and any riders plus 6% interest per year, compounded annually, from their due dates to the date of reinstatement.

The date of reinstatement will be the first day of the Policy Month on or next following the date We approve your application for reinstatement. When this policy is reinstated, a new two-year contestable period will apply with respect to material misrepresentations made in the application for reinstatement.

**Reserve Basis**

The reserves for this policy are equal to or greater than those required by law. A detailed statement of the method of computing reserves has been filed with the insurance supervisory official of the state in which this policy is delivered.

## SECTION 4 — OWNERSHIP AND BENEFICIARY

**Owner**

The owner of this policy is the Insured person named on page 3, unless stated otherwise in the application or later changed. As owner, You can exercise all rights under your policy while the Insured is alive. You can change the ownership if You send us a Written Request to do so. If a new owner is named, any earlier designations will be void.

**Beneficiary**

The beneficiary is the person or persons named by You to receive the Proceeds when the Insured dies. If two or more beneficiaries are alive when the Insured dies, We will pay them in equal shares unless You have chosen otherwise. If no beneficiary is alive when the Insured dies, You will be the beneficiary if living, otherwise the Proceeds will be paid to your estate.

**Change**

To change the owner or beneficiary, send a Written Request while the Insured is alive. The change will not take effect until it is recorded at our Life Administration Office. Once recorded, it will take effect as of the date You signed it. The change will not apply to any payment made by us before We recorded your request. If You have named an irrevocable beneficiary, You will need that beneficiary's consent in order to make a change of beneficiary.

**Assignment**

You may assign this policy. We will not be bound by any assignment unless it is in writing, signed by You, and is recorded at our Life Administration Office. We are not responsible for the validity of any assignment. Any amount to be paid to an assignee will be paid in a single sum. Any claim made by an assignee will be subject to proof of the assignee's interest and the extent of the assignment.

PGRAT97NW1

7

Exhibit __A__, Pg. __21__

## SECTION 5 — EXCHANGE PROVISION

You may exchange this policy for a new policy on this plan of insurance at any time after the initial premium guarantee period, subject to:

(a) proof of insurability acceptable to us; and
(b) the Insured's age not being greater than the maximum issue age for the policy at the time of exchange.

**The New Policy**

The Policy Date of the new policy will be the date of the exchange, which is the date We receive your application for exchange, accompanied by your first premium. The issue age will be the Insured's age on the date of the exchange. We will determine the rate class and approve the amount of insurance based on the evidence of insurability provided. The premiums for the new policy will be based on the premium rates in effect on the new Policy Date, and on the issue age of the new policy.

## SECTION 6 — CONVERSION PROVISION

You may convert the amount of term life insurance provided by this policy to a new policy on a different plan of insurance. The conversion date may be the first day of any Policy Month when:

(a) this policy is in effect;
(b) all premiums due before that date have been paid; and
(c) the Insured is age 75 or younger.

To convert this policy, You must submit a written application and pay the first premium due on the new policy. We will not require evidence of insurability to convert the term life insurance provided by this policy.

**The New Policy**

The amount of insurance provided by the new policy will be the same as the amount of term life insurance provided by this policy. The Policy Date will be the same as the conversion date. The issue age will be the Insured's age on the conversion date. The rate class will be the same as this policy. The plan of insurance may be any life insurance plan, designated by the Company, provided:

(a) the plan is available to persons of the Insured's age on that date;
(b) the amount of insurance to be provided is available under the plan on that date; and
(c) our risk, excluding any riders, does not increase as a result of the conversion.

There will always be at least one policy available for issue under this section.

The premium rates for the new policy will be those in effect on the Policy Date of the new policy, based on the issue age of the new policy.

The Incontestability and Suicide provisions will be effective from the Policy Date of this policy.

# SECTION 7 — PAYMENT OF BENEFITS

**Payment**

Any amount to be paid under this policy will be paid in a lump sum, unless one of the following payment options is chosen. All or part of the amount to be paid may be applied to any payment option.

**Payment Options**

1. Interest Payments - Any amount applied under this option will earn interest that can either be paid to You monthly or left to accumulate. Interest will be credited at an effective rate of 3% per year or any higher rate we declare. The first interest payment will be made one month after this option takes effect. You may withdraw the accumulated interest and all or part of the amount at any time. The minimum withdrawal allowed will be $500.

2. Fixed Period Payments – We will make periodic payments for a fixed period. The first payment will be paid as of the last day of the initial payment interval. The maximum time over which payments will be made by us or money will be held by us is thirty (30) years.

3. Fixed Amount Payments - Monthly payments of not less than $5 per $1,000 of the amount applied under this option will be made until the full amount plus interest has been paid. The first payment will be made on the date this option takes effect. The unpaid balance may be withdrawn at any time.

4. Life Income Payments - Monthly payments will be made according to the option chosen below. The first payment will be made on the date this option takes effect. Payments will be based on the payee's sex and age on the date the first payment is due. Payment will be subject to satisfactory proof of the payee's age.

    (a)     Life Income - Payments will be made only during the lifetime of the payee.
    (b)     Life Income with Certain Period - Payments will be made for a guaranteed period of either 10 or 20 years. Such payments will be made even if the payee dies. After the certain period, payments will only be made while the payee is alive.
    (c)     Life Income with Refund Provision - Payments will continue after the payee dies, until the sum of the payments equals the amount applied under the option. If the payee is alive when the sum of the payments equals the amount applied under this option, payments will continue until the payee dies.

    We reserve the right to require proof that the payee is alive at any time any payment is made. You may not withdraw any amount applied to any of the life income options.

5.      Other Payment Options - Any amount payable under this policy may be paid in any manner agreed to by us.

**Payment Frequency**

Annual, semi-annual or quarterly payments may be made instead of monthly.

**Payment Option Rates**

1. Interest Payments, Fixed Period Payments and Fixed Amount Payments – Amounts applied to these options will earn interest at rates declared annually by us. The minimum effective rate will be 3% per year. Interest in excess of 3% will increase the amount of payments or, for the Fixed Amount Payments Option, the period of payments will be lengthened. The present value of any unpaid payment will be based on the 3% interest rate. We may offer higher guaranteed rates with certain conditions on amounts and withdrawals.

2. Life Income Options - Payments will be based on rates declared by us. Payments will not be less than the minimums described in the Minimum Income Tables on pages 11, 12 and 13.

PGRAT97NW1

9

Exhibit _A_, Pg. _23_

## SECTION 7 – PAYMENT OF BENEFITS (Cont.'d)

**Basis of Values**

Minimum income rates are based on the 1983 Individual Annuity Mortality Table. Interest is assumed at the rate of 3% per year.

**Payment Option Guidelines**

### Choice of Payment Options

You may choose a payment option while the Insured is alive. When the Insured dies, the beneficiary may choose payment option if no option is then in effect.

### Effective Date

The most recent payment option chosen by You and recorded at our Life Administration Office while the Insured is alive, will take effect on the date the Insured dies. All other payment options will take effect when the Written Request is recorded at our Administrative Office or later, if specified.

### Transfer Between Options

A beneficiary receiving payment under an option with the right to withdraw may transfer the withdrawal value to any other option available.

### Life Income

**Option Limitations**

The life income option will not be available, except with our consent, if the payee is one of the following:

1. corporation;
2. partnership;
3. association; or
4. guardian, trustee or representative of an estate.

**Minimum Amounts**

Amounts of less than $5,000 may not be applied under any payment option. If payments are less than $20, We have the right to change the payment frequency or pay the withdrawal value.

**Payment Certificate**

At the time an amount becomes payable under a payment option, a payment certificate will be issued to the payee in exchange for this policy. The effective date of the certificate will be the effective date of the option.

**Death of Payee**

If any payments remain to be made when the payee dies, they will be made according to the terms of the payment certificate.

**Withdrawal and**

**Change Limitations**

The right to change the method of payment will be available if it is provided in the payment certificate. Any change or withdrawal will be subject to the Payment Options and Payment Option Guidelines provisions of this policy.

**Deferment**

We may delay paying a withdrawal for up to 6 months from the date the Written Request is recorded at our Life Administration Office. If We delay for 30 days or more, interest will be paid on the withdrawal at an effective rate of 3%. We may declare a higher rate from the date the withdrawal request is recorded to the payment date. We also may require the payment certificate for endorsement.

PGRAT97NW1

10

Exhibit _A_, Pg. _24_

## SECTION 7 — PAYMENT OF BENEFITS (Cont'd.)

**Minimum Income Tables**
The tables list the minimum income per $1,000 of the amount applied under Options 2 and 4.

### MINIMUM INCOME TABLES
### MINIMUM INCOME PAYMENTS FOR EACH $1,000 OF AMOUNT PAYABLE

#### OPTION 2 — Fixed Period Payments

| Period (Years) | Annual Payment | Semi-Annual Payment | Quarterly Payment | Monthly Payment |
|---|---|---|---|---|
| 1 | $1,030.00 | $511.19 | $254.65 | $84.68 |
| 2 | 522.61 | 259.37 | 129.21 | 42.96 |
| 3 | 353.53 | 175.48 | 87.41 | 29.06 |
| 4 | 269.03 | 133.52 | 66.51 | 22.12 |
| 5 | 218.35 | 108.37 | 53.99 | 17.95 |
| 6 | 184.60 | 91.62 | 45.64 | 15.18 |
| 7 | 160.51 | 79.66 | 39.68 | 13.20 |
| 8 | 142.48 | 70.70 | 35.22 | 11.71 |
| 9 | 128.43 | 63.74 | 31.75 | 10.56 |
| 10 | 117.23 | 58.18 | 28.98 | 9.64 |
| 11 | 108.08 | 53.64 | 26.72 | 8.88 |
| 12 | 100.46 | 49.86 | 24.84 | 8.26 |
| 13 | 94.03 | 46.67 | 23.25 | 7.73 |
| 14 | 88.53 | 43.94 | 21.89 | 7.28 |
| 15 | 83.77 | 41.57 | 20.71 | 6.89 |
| 16 | 79.61 | 39.51 | 19.68 | 6.54 |
| 17 | 75.95 | 37.70 | 18.78 | 6.24 |
| 18 | 72.71 | 36.09 | 17.98 | 5.98 |
| 19 | 69.81 | 34.65 | 17.26 | 5.74 |
| 20 | 67.22 | 33.36 | 16.62 | 5.53 |
| 21 | 64.87 | 32.20 | 16.04 | 5.33 |
| 22 | 62.75 | 31.14 | 15.51 | 5.16 |
| 23 | 60.81 | 30.18 | 15.04 | 5.00 |
| 24 | 59.05 | 29.31 | 14.60 | 4.85 |
| 25 | 57.43 | 28.50 | 14.20 | 4.72 |
| 26 | 55.94 | 27.76 | 13.83 | 4.60 |
| 27 | 54.56 | 27.08 | 13.49 | 4.49 |
| 28 | 53.29 | 26.45 | 13.18 | 4.38 |
| 29 | 52.11 | 25.86 | 12.88 | 4.28 |
| 30 | 51.02 | 25.32 | 12.61 | 4.19 |

#### OPTION 4 — LIFE INCOME PAYMENTS

| MALE | | | Age Nearest Birthday of Payee When 1st Payment Is Payable | FEMALE | | |
|---|---|---|---|---|---|---|
| Life Only | 10 Year Certain | 20 Year Certain | | Life Only | 10 Year Certain | 20 Year Certain |
| $2.81 | $2.81 | $2.81 | 0-5 | $2.75 | $2.75 | $2.75 |
| 2.83 | 2.82 | 2.82 | 6 | 2.76 | 2.76 | 2.76 |
| 2.84 | 2.84 | 2.83 | 7 | 2.77 | 2.77 | 2.77 |
| 2.85 | 2.85 | 2.84 | 8 | 2.78 | 2.78 | 2.78 |
| 2.86 | 2.86 | 2.86 | 9 | 2.79 | | 2.79 |
| 2.87 | 2.87 | 2.87 | 10 | 2.80 | 2.80 | 2.80 |
| 2.89 | 2.89 | 2.88 | 11 | 2.81 | 2.81 | 2.81 |
| 2.90 | 2.90 | 2.90 | 12 | 2.82 | 2.82 | 2.82 |
| 2.92 | 2.91 | 2.91 | 13 | 2.83 | 2.83 | 2.83 |
| 2.93 | 2.93 | 2.92 | 14 | 2.85 | 2.85 | 2.84 |

Exhibit A, Pg. 25

## SECTION 7 — PAYMENT OF BENEFITS (Cont'd.)
### MINIMUM INCOME TABLES (Cont'd)
### MINIMUM INCOME PAYMENTS FOR EACH $1,000 OF AMOUNT PAYABLE

### OPTION 4 — LIFE INCOME PAYMENTS

| MALE | | | Age Nearest Birthday of Payee When 1st Payment is Payable | FEMALE | | |
| --- | --- | --- | --- | --- | --- | --- |
| Life Only | 10 Year Certain | 20 Year Certain | | Life Only | 10 Year Certain | 20 Year Certain |
| $2.95 | $2.95 | $2.94 | 15 | $2.86 | $2.86 | $2.86 |
| 2.96 | 2.96 | 2.96 | 16 | 2.87 | 2.87 | 2.87 |
| 2.98 | 2.98 | 2.97 | 17 | 2.89 | 2.89 | 2.88 |
| 3.00 | 3.00 | 2.99 | 18 | 2.90 | 2.90 | 2.90 |
| 3.02 | 3.01 | 3.01 | 19 | 2.92 | 2.92 | 2.91 |
| 3.04 | 3.03 | 3.03 | 20 | 2.93 | 2.93 | 2.93 |
| 3.06 | 3.05 | 3.05 | 21 | 2.95 | 2.95 | 2.94 |
| 3.08 | 3.07 | 3.07 | 22 | 2.96 | 2.96 | 2.96 |
| 3.10 | 3.09 | 3.09 | 23 | 2.98 | 2.98 | 2.98 |
| 3.12 | 3.12 | 3.11 | 24 | 3.00 | 3.00 | 2.99 |
| 3.14 | 3.14 | 3.13 | 25 | 3.02 | 3.02 | 3.01 |
| 3.17 | 3.16 | 3.15 | 26 | 3.04 | 3.04 | 3.03 |
| 3.19 | 3.19 | 3.18 | 27 | 3.06 | 3.06 | 3.05 |
| 3.22 | 3.22 | 3.20 | 28 | 3.08 | 3.08 | 3.07 |
| 3.25 | 3.24 | 3.23 | 29 | 3.10 | 3.10 | 3.09 |
| 3.28 | 3.27 | 3.26 | 30 | 3.13 | 3.12 | 3.12 |
| 3.31 | 3.30 | 3.29 | 31 | 3.15 | 3.15 | 3.14 |
| 3.34 | 3.33 | 3.32 | 32 | 3.18 | 3.17 | 3.16 |
| 3.37 | 3.37 | 3.35 | 33 | 3.20 | 3.20 | 3.19 |
| 3.41 | 3.40 | 3.38 | 34 | 3.23 | 3.23 | 3.22 |
| 3.44 | 3.44 | 3.41 | 35 | 3.26 | 3.26 | 3.24 |
| 3.48 | 3.48 | 3.45 | 36 | 3.29 | 3.29 | 3.27 |
| 3.52 | 3.51 | 3.48 | 37 | 3.32 | 3.32 | 3.30 |
| 3.57 | 3.56 | 3.52 | 38 | 3.35 | 3.35 | 3.33 |
| 3.61 | 3.60 | 3.56 | 39 | 3.39 | 3.38 | 3.37 |
| 3.66 | 3.64 | 3.60 | 40 | 3.42 | 3.42 | 3.40 |
| 3.71 | 3.69 | 3.64 | 41 | 3.46 | 3.46 | 3.43 |
| 3.76 | 3.74 | 3.68 | 42 | 3.50 | 3.50 | 3.47 |
| 3.81 | 3.79 | 3.73 | 43 | 3.54 | 3.54 | 3.51 |
| 3.87 | 3.85 | 3.77 | 44 | 3.59 | 3.58 | 3.55 |
| 3.93 | 3.90 | 3.82 | 45 | 3.63 | 3.63 | 3.59 |
| 3.99 | 3.96 | 3.87 | 46 | 3.68 | 3.67 | 3.63 |
| 4.05 | 4.02 | 3.92 | 47 | 3.73 | 3.72 | 3.68 |
| 4.12 | 4.09 | 3.97 | 48 | 3.79 | 3.77 | 3.72 |
| 4.19 | 4.15 | 4.03 | 49 | 3.84 | 3.83 | 3.77 |
| 4.27 | 4.22 | 4.08 | 50 | 3.90 | 3.89 | 3.82 |
| 4.34 | 4.29 | 4.14 | 51 | 3.97 | 3.95 | 3.88 |
| 4.43 | 4.37 | 4.20 | 52 | 4.03 | 4.01 | 3.93 |
| 4.51 | 4.45 | 4.26 | 53 | 4.10 | 4.08 | 3.99 |
| 4.60 | 4.54 | 4.32 | 54 | 4.18 | 4.15 | 4.04 |
| 4.70 | 4.62 | 4.39 | 55 | 4.25 | 4.22 | 4.11 |
| 4.80 | 4.72 | 4.45 | 56 | 4.34 | 4.30 | 4.17 |
| 4.91 | 4.82 | 4.51 | 57 | 4.42 | 4.38 | 4.23 |
| 5.03 | 4.92 | 4.58 | 58 | 4.52 | 4.47 | 4.30 |
| 5.15 | 5.03 | 4.64 | 59 | 4.61 | 4.56 | 4.37 |

Exhibit A , Pg. 26

## SECTION 7 — PAYMENT OF BENEFITS (Cont'd.)
### MINIMUM INCOME TABLES (Cont'd)
#### MINIMUM INCOME PAYMENTS FOR EACH $1,000 OF AMOUNT PAYABLE

### OPTION 4 — LIFE INCOME PAYMENTS

| MALE Life Only | 10 Year Certain | 20 Year Certain | Age Nearest Birthday of Payee When 1st Payment Is Payable | FEMALE Life Only | 10 Year Certain | 20 Year Certain |
|---|---|---|---|---|---|---|
| $ 5.28 | $ 5.14 | $ 4.71 | 60 | $ 4.72 | $ 4.66 | $ 4.44 |
| 5.42 | 5.26 | 4.78 | 61 | 4.83 | 4.76 | 4.51 |
| 5.57 | 5.39 | 4.84 | 62 | 4.95 | 4.86 | 4.58 |
| 5.74 | 5.52 | 4.90 | 63 | 5.07 | 4.98 | 4.65 |
| 5.91 | 5.68 | 4.98 | 64 | 5.21 | 5.10 | 4.72 |
| 6.10 | 5.81 | 5.02 | 65 | 5.35 | 5.22 | 4.79 |
| 6.30 | 5.96 | 5.08 | 66 | 5.51 | 5.36 | 4.86 |
| 6.50 | 6.11 | 5.13 | 67 | 5.67 | 5.50 | 4.93 |
| 6.73 | 6.28 | 5.18 | 68 | 5.85 | 5.65 | 5.00 |
| 6.97 | 6.44 | 5.23 | 69 | 6.04 | 5.80 | 5.06 |
| 7.23 | 6.61 | 5.27 | 70 | 6.25 | 5.96 | 5.12 |
| 7.51 | 6.78 | 5.31 | 71 | 6.47 | 6.14 | 5.18 |
| 7.80 | 6.96 | 5.34 | 72 | 6.71 | 6.31 | 5.23 |
| 8.12 | 7.14 | 5.37 | 73 | 6.97 | 6.50 | 5.28 |
| 8.45 | 7.32 | 5.40 | 74 | 7.26 | 6.69 | 5.32 |
| 8.82 | 7.49 | 5.42 | 75 | 7.58 | 6.89 | 5.35 |
| 9.21 | 7.67 | 5.44 | 76 | 7.90 | 7.09 | 5.39 |
| 9.62 | 7.84 | 5.45 | 77 | 8.26 | 7.29 | 5.41 |
| 10.07 | 8.01 | 5.47 | 78 | 8.65 | 7.49 | 5.43 |
| 10.56 | 8.17 | 5.48 | 79 | 9.07 | 7.69 | 5.45 |
| 11.06 | 8.33 | 5.49 | 80 | 9.53 | 7.89 | 5.47 |
| 11.61 | 8.48 | 5.49 | 81 | 10.03 | 8.08 | 5.48 |
| 12.19 | 8.61 | 5.50 | 82 | 10.57 | 8.25 | 5.49 |
| 12.81 | 8.74 | 5.50 | 83 | 11.16 | 8.43 | 5.49 |
| 13.48 | 8.86 | 5.51 | 84 | 11.79 | 8.59 | 5.50 |
| 14.16 | 8.97 | 5.51 | 85 | 12.48 | 8.74 | 5.50 |
| 14.89 | 9.06 | 5.51 | 86 | 13.21 | 8.87 | 5.51 |
| 15.68 | 9.15 | 5.51 | 87 | 14.00 | 8.99 | 5.51 |
| 16.47 | 9.23 | 5.51 | 88 | 14.84 | 9.09 | 5.51 |
| 17.33 | 9.30 | 5.51 | 89 | 15.74 | 9.18 | 5.51 |
| 18.25 | 9.36 | 5.51 | 90 | 16.68 | 9.26 | 5.51 |
| 19.24 | 9.42 | 5.51 | 91 | 17.66 | 9.33 | 5.51 |
| 20.29 | 9.46 | 5.51 | 92 | 18.69 | 9.38 | 5.51 |
| 21.42 | 9.50 | 5.51 | 93 | 19.75 | 9.43 | 5.51 |
| 22.64 | 9.53 | 5.51 | 94 | 20.86 | 9.48 | 5.51 |
| 23.96 | 9.56 | 5.51 | 95 | 22.01 | 9.51 | 5.51 |

PGRAT97NW1

13

Exhibit _A_ , Pg. _27_



**GREAT AMERICAN LIFE INSURANCE COMPANY**
Life Division • P.O. Box 5416 • Cincinnati, OH 45201-5416

## ACCELERATED BENEFIT RIDER

**ANY PAYMENT MADE UNDER THIS RIDER WILL REDUCE POLICY DEATH BENEFITS AND ANY POLICY CASH OR OTHER ACCUMULATED VALUES. ANY PAYMENT MADE UNDER THIS RIDER MAY BE TAXABLE. AS WITH ALL TAX MATTERS, A TAX ADVISOR SHOULD BE CONSULTED.**

**BENEFIT** - An Accelerated Benefit Payment is an accelerated payment of life insurance proceeds for a medically determinable condition resulting in a life expectancy of twelve (12) months or less or for permanent confinement to a nursing home.

**ELIGIBLE PROCEEDS** - The Eligible Proceeds are equal to the Proceeds of the policy, LESS:
    (a)  Decreasing Term Rider Amounts; and
    (b)  Level Term Rider amounts with less than one year to termination.

**BENEFIT BASE** - The Benefit Base is the present value of the Eligible Proceeds elected to be transferred. The Benefit Base may be paid in a lump sum or in monthly installments. Payment will be made according to the rules for the option under which election is made.

The present value computation takes into consideration:
    (a)  expected future premiums; and
    (b)  a processing charge of not more than $250.

Present values will be based on experience assumptions for the option under which the election is made as defined in the Eligibility provision. The interest rate used in discounting future values will not be less than 3% per year, nor greater than:
    (a)  the Monthly Average Corporate Bond Yield published by Moody's Investor Service, Inc., or any successor to that service; or
    (b)  if that monthly average is no longer published, a substantially similar average established by regulations issued by the insurance supervisor of the state in which the policy to which this rider is attached is delivered.

The Benefit Base will be:
    (a)  no less than the net Cash Value of the policy's Proceeds elected to be transferred; and
    (b)  not more than the policy's Proceeds elected to be transferred.

**ELECTION FOR TRANSFER** - You may elect to transfer up to 75% of the Eligible Proceeds to a Benefit Base if the Insured qualifies as defined in the Eligibility provision of this rider. You must have a combined total Face Amount of at least $10,000 to exercise this rider. The amount transferred must be at least $7,500 and can be no more than $200,000. Amounts transferred under all policies with this rider or a similar rider count towards these limits.

This rider may be exercised only one time for each Insured. If there is more than one covered Insured under any policy, this benefit may only be exercised on amounts of coverage for the Insured who is eligible as defined in the Eligibility provision.

Transfers under this rider cannot be elected unless this policy is in force other than as extended insurance. We must receive the consent of all irrevocable beneficiaries and/or all assignees before we will transfer any Eligible Proceeds.

RACBR97NW1

All elections to transfer must be in writing to us and must be delivered to the Life Administration Office. The policy must accompany this election. The election must indicate the option for which the Insured is qualified to transfer eligible proceeds. The election must include the information required under the Limited Life Expectancy Option or Nursing Home Option, according to the Option selected.

Accelerated Benefits are made available only on a voluntary basis. If you are required by law to use this rider to pay or meet the claims of creditors or required by a government agency to use this rider to apply for, obtain or maintain a government benefit, you are not eligible to elect this rider.

## ELIGIBILITY

**LIMITED LIFE EXPECTANCY OPTION** - If the Insured suffers a medically determinable condition resulting in a life expectancy of 12 months or less, this option may be elected. You must provide us with evidence satisfactory to us of the Insured's medical condition. A licensed physician's certification of the Insured's life expectancy is required.

Unless a lump sum payment of the Benefit Base is requested in writing, the Benefit will be paid in equal monthly payments for 12 months. These payments will be based on an interest rate of not less than 3% per year.

**NURSING HOME OPTION** - This option may be elected if the Insured:
    (a)   is confined to an Eligible Nursing Home;
    (b)   has been confined in an Eligible Nursing Home continuously for at least 90 days prior to the election; and
    (c)   is expected to stay in the Eligible Nursing Home until death.

You must provide us with evidence satisfactory to us of the above. A licensed physician's certification that the Eligible Nursing Home stay is expected to continue to death is required.

An Eligible Nursing Home is an institution or part of a hospital which:
    (a)   is a Medicare approved skilled nursing care service provider; or
    (b)   is licensed by the state in which it is located as a skilled nursing facility or an intermediate care facility; or
    (c)   meets all of the following requirements:
        (1)   has as its main function, providing nursing care;
        (2)   is supervised by a registered nurse or licensed practical nurse;
        (3)   maintains a daily medical record of each patient; and
        (4)   dispenses and maintains records and control for all medications dispensed.

An institution which primarily provides residential facilities is not an Eligible Nursing Home.

Unless a lump sum payment of the Benefit Base is requested in writing, the benefit will be paid monthly for the years and at least in the amounts shown in the table below.

| Attained Age of Insured | Payment Period In Years | Minimum Monthly Payment per $1,000 Of Benefit Base |
|---|---|---|
| Under 64 | 10 | $ 9.64 |
| 65 - 69 | 9 | 10.56 |
| 70 - 73 | 8 | 11.71 |
| 74 – 77 | 7 | 13.20 |
| 78 – 81 | 6 | 15.18 |
| 82 – 85 | 5 | 17.95 |
| 86 – 87 | 4 | 22.12 |
| 88 – 89 | 3 | 29.06 |
| 90+ | 2 | 42.96 |

We reserve the right to set a maximum monthly benefit. Any maximum will be at least $5,000.

RACBR97NW1

**DEATH OF INSURED** - If the Insured dies before all payments are made, the present value of future payments will be paid to the Beneficiary. Such payment shall be based on the interest rate used to compute the monthly payment.

**EFFECT ON THE POLICY** - After the policy's Eligible Proceeds have been transferred, the policy will stay in force for a reduced amount. The Policy Proceeds and all policy values will be reduced by the percentage of Eligible Proceeds transferred. Policy values that will be reduced include:

    (a)   face amount;
    (b)   future policy premiums (excluding the policy fee);
    (c)   cash values, if any;
    (d)   amounts available under Reduced Paid-Up or Extended Term Insurance Nonforfeiture Options; and
    (e)   policy loan amounts outstanding.

Any policy fees associated with the policy will not be reduced.

**BENEFIT PAYMENT NOTICE** - At the time an election is applied for under this rider, a Benefit Payment Notice will be provided to the Owner. This notice will show:

    1.   effect of election on policy death benefits, cash, loan and other values;
    2.   the effect of policy termination or maturity on benefit payments, if any;
    3.   amount of benefit; and
    4.   any exclusions or limitations.

**EFFECTIVE DATE** - This rider is attached to and made a part of the policy to which it is attached. This rider is effective as of the Issue Date of the policy.

**TERMINATION** - This rider will terminate on the earlier of:

    1.   the date coverage ends under the policy as shown on the Policy Specification Page; or
    2.   the date the policy matures, is surrendered, or terminates; or
    3.   the date we receive your written request to cancel this rider; or
    4.   the date any premium due for this policy remains unpaid at the end of the grace period; or
    5.   election of the Extended Term Nonforfeiture Option under the policy.

This rider is signed for **Great American Life Insurance Company**.

Secretary

Executive Vice President

**GREAT AMERICAN • LIFE INSURANCE COMPANY**

RACBR97NW1

Exhibit _A_, Pg. _30_

**GREAT AMERICAN LIFE INSURANCE COMPANY**
Life Division • P.O. Box 5416 • Cincinnati, OH 45201-5416

## AMENDMENT OF APPLICATION

I hereby amend my application for insurance, which was made to your Company on the 3rd day of August, 1998 as shown below:

1) Since my application was made to your Company, I have not submitted an application to any life or health insurance company nor have I been declined, rated, limited or postponed for any life or health insurance, except as follows:

        If "no exceptions" please check box. ☐

2) Since my application was made to your Company, I have not been ill or injured nor have I consulted any doctor or health practitioner, except as follows:

| Physicians' or Practitioners' Name and Address | Consultation | Date | Duration | Result |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

**REMARKS:**
        If "no exceptions" please check box. ☐

I hereby agree that the above statement(s) shall be a part of my policy and application and that this amendment has been completed in duplicate and attached to policy EM9802676 at the time of delivery.

Dated at _Chula Vista_, Date _December 19th_ Month _____, 19_98_

Witness _____  _____
        Agent                                  Proposed Insured

                                            _____
                                       Applicant, if other than Proposed Insured

**IMPORTANT INFORMATION FOR THE AGENT – AMENDMENT IS TO BE SIGNED, DATED AND WITNESSED. RETURN THIS COPY TO THE ADMINISTRATIVE OFFICE.**

This policy cannot be delivered until the amendment and the duplicate bound in the policy have been completed. No change in the wording of the amendment can be made. If the facts stated in the amendment are not correct, that is, there are "exceptions", do not have it signed. Return the policy and amendment with a letter of explanation to the Administrative Office.

If the statements in the amendment are correct without change, have the original and duplicate that is bound in the policy properly signed, dated and witnessed and mail the original to the Administrative Office. Be certain that the signature appears on both the original and duplicate of the amendment.

S607397NW1    **THIS COPY IS TO BE BOUND IN OR ATTACHED TO THE POLICY**

Exhibit _A_, Pg. _31_

**GREAT AMERICAN LIFE INSURANCE COMPANY**
Life Division • P.O. Box 5416 • Cincinnati, OH 45201-5416

Amendment to Policy No. EM9802676 and application of OLIVIA CASTELLANOS of
140 E 31ST STREET, NATIONAL CITY, CA 91950.

**The Face Amount of this policy is $250,000.**

**This policy has been issued at select rates.**

I HEREBY AGREE THAT THE ABOVE STATEMENT OR STATEMENTS SHALL BE A PART OF
MY POLICY AND APPLICATION.

SIGNED THIS ___19ᵗʰ___ DAY OF ___DECEMBER___, 1998

_____        _____
WITNESS                            APPLICANT'S SIGNATURE
                                   (IF 15 YEARS OR OLDER, OTHERWISE, PARENT'S SIGNATURE NEEDED)

MBFCA97NW1

Exhibit __A__, Pg. __32__

**REDACTED**

# JL

**GREAT AMERICAN LIFE INSURANCE COMPANY**
Life Division • P.O. Box 5416 • Cincinnati, Ohio 45201-5416

| — Complete for proper Production Credit — |
|---|
| General Agency KF915          Code # _____ % ____ |
| Agent Name COLEY DAVIS  Code E110010004 % 100 |
| Agent Name _____ Code # _____ % ____ |

**PART I**  Please Print

| | |
|---|---|
| Proposed Insured OLIVIA Y. CASTELLANOS | Owner *Complete only if Owner is not Proposed Insured* |
| First  Middle Initial  Last | Relationship _____ Birth Date _____ |
| Address 140 E 31st STREET | Address _____ |
| City NATIONAL CITY State CA Zip 91950 | City _____ State ____ Zip ____ |
| Social Security Number _____ | Social Security/Tax I.D. No. _____ |

Male ☐ Female ☑ Birth Date _____ Age 37 Birth State CA Marital Status S Driver's License# _____

Employer Name & Address CITY OF CHULA VISTA 276 7th AVE Occupation CSO
C.V. CA. 91910

Send Premium Notice To: ☑ Proposed Insured ☐ Owner ☐ Other (give name/address in Special Requests)

**INSURANCE APPLIED FOR:** Plan Name AMERICAN 30 YEAR TERM Amount $ 305,000

**PREMIUM MODE:** ☐ Annual ☐ Semiannual ☐ Quarterly ☑ Monthly Bank Draft ☐ Other (specify)_____
Scheduled Premium (Modal – Universal Life Only) $ _____  Additional First Year Premium (Universal Life Only) $ _____

Death Benefit Option (Universal Life Only) ☐ Option A ☐ Option B  PREFERRED  $79.83

**ADDITIONAL BENEFITS BY RIDER**
☐ Spouse Term Insurance ☐ Waiver of Scheduled Premium (UL) ☐ Waiver of Premium ☐ Accidental Death Benefit
☐ Children's Term Insurance ☐ Waiver of Monthly Deductions (UL) ☐ Other Riders _____

| Name of Other Insureds | Birth Date | Sex | Age | Height/ Weight | Birthplace | Social Security Number | Relationship To Insured | Amount Applied For |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**BENEFICIARY OF THE PROPOSED INSURED**

Primary CATHERINE Y BECK    Social Security No. _____ Relationship MOTHER
Name & Address

Contingent _____    Social Security No. _____ Relationship _____
Name & Address

**LIFE INSURANCE (On any person proposed for coverage)**
Will any life insurance, or annuities, in this or any other company be replaced, discontinued, reduced or changed if insurance now applied for is issued? ☑ Yes ☐ No  MASS.
If "Yes," give details: OLIVIA  GENERAL  109 0301280  150,000  8/96
Insured  Company  Policy Number  Amount  Policy Date

_____  _____  _____  _____  _____
Insured  Company  Policy Number  Amount  Policy Date

List all life insurance in force or currently applied for. (If none, state "none"):
54A  150 000  VALU-TERM  96  0  Standard  Rated
Company  Amount  Plan  Year Issued  Amount ADB  Standard  Rated

_____  _____  _____  _____  _____  _____  _____
Company  Amount  Plan  Year Issued  Amount ADB  Standard  Rated

**SMOKING HABITS**
PROPOSED INSURED: Used any tobacco last 36 months? ☐ Yes ☑ No  *12 MONTHS?* ☐ Yes ☑ No
Currently use any form of tobacco? ☐ Cigarettes ☐ Pipe ☐ Cigars ☐ Other _____ If so, For how long? _____

PROPOSED SPOUSE/ADDITIONAL INSURED: Used any tobacco last 36 months? ☐ Yes ☐ No  *12 MONTHS?* ☐ Yes ☐ No
Currently use any form of tobacco? ☐ Cigarettes ☐ Pipe ☐ Cigars ☐ Other _____ If so, For how long? _____

A601097NW1

| HAS ANY PERSON PROPOSED FOR COVERAGE … | Yes | No |
|---|---|---|
| a. Ever applied for insurance or reinstatement which was declined, postponed, rated, modified or had any such insurance cancelled or a renewal premium refused? | ☐ | ☑ |
| b. Ever received or claimed indemnity, benefits, or a payment for any injury, sickness or impaired condition? | ☐ | ☑ |
| c. Engaged in or plan to engage in any form of motorized racing, scuba diving, parachuting, hang-gliding, ballooning, or mountain climbing? (If Yes, complete avocation questionnaire) | ☐ | ☑ |
| d. Ever made any flights as a pilot, student pilot, or crew member of any aircraft in the past three years or intend to do so in the future? (If Yes, complete aviation questionnaire) | ☐ | ☑ |
| e. Been charged but not acquitted of the violation of any criminal law, or fined more than $100 for the violation of any traffic law, in the past three years? | ☐ | ☑ |
| f. Any intention of travelling or residing outside the U.S. or Canada in the next year? | ☐ | ☑ |
| g. Belong to or intend to join any active or reserve military or naval organization? | ☐ | ☑ |

If answering "Yes" to any of the above, questions a. through g., please give details including name of person _____

## PART II
### TO THE BEST OF YOUR KNOWLEDGE AND BELIEF…

| | Proposed Insured Yes No | Spouse/Add'l Insured Yes No | All Children Yes No |
|---|---|---|---|
| 1. Has anyone proposed for coverage ever been treated for or had: | | | |
| a. Impairment of the eyes or ears? | | ☐ ☐ | ☐ ☐ |
| b. Dizziness, fainting, convulsions, headache, paralysis, or stroke within the last ten years? | | ☐ ☐ | ☐ ☐ |
| c. Shortness of breath, blood spitting, bronchitis, asthma, emphysema, or chronic respiratory disorder within the last ten years? | | ☐ ☐ | ☐ ☐ |
| d. Chest pain, palpitation, high blood pressure, heart murmur, heart attack, or other disorder of the heart or blood vessels? | | ☐ ☐ | ☐ ☐ |
| e. Jaundice, intestinal bleeding, ulcer, colitis, recurrent indigestion, or any other disease of the stomach, intestines, liver, or gall bladder? | | ☐ ☐ | ☐ ☐ |
| f. Sugar, proteinuria, blood or pus in urine, venereal disease, stone or other disorder of kidney, bladder, prostate, or reproductive organs? | | ☐ ☐ | ☐ ☐ |
| g. Diabetes, thyroid, or other endocrine disorders? | | ☐ ☐ | ☐ ☐ |
| h. Disorder of the breasts or pelvic organs? | | ☐ ☐ | ☐ ☐ |
| i. Neuritis, arthritis, or disorder of the muscles or bones, including the spine, back or joints? | | ☐ ☐ | ☐ ☐ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | | ☐ ☐ | ☐ ☐ |
| k. Anemia or other disorder of the blood? | | ☐ ☐ | ☐ ☐ |
| l. Alcoholism or addiction to habit-forming drugs? | | ☐ ☐ | ☐ ☐ |
| m. Any mental or physical disorder not listed above? | | ☐ ☐ | ☐ ☐ |
| 2. Has anyone proposed for coverage: | | | |
| a. Had a physical checkup, consultation, or surgery within the last five years? | | ☐ ☐ | ☐ ☐ |
| b. Been a patient in a hospital, clinic, or other medical facility within the last five years? | | ☐ ☐ | ☐ ☐ |
| c. Had an electrocardiogram, X-ray or other diagnostic test within the last five years? | | ☐ ☐ | ☐ ☐ |
| d. Been advised to have any diagnostic test, hospitalization, or surgery, which was not completed? | | ☐ ☐ | ☐ ☐ |
| e. Been diagnosed or treated by a member of the medical profession as having acquired immune deficiency syndrome (AIDS) or AIDS related complex (ARC)? | | ☐ ☐ | ☐ ☐ |
| f. Ever had any disorder of menstruation, pregnancy, or other reproductive organs? | | ☐ ☐ | ☐ ☐ |
| 3. Are you now pregnant? (If "Yes," expected due date ___/___/___) | | ☐ ☐ | ☐ ☐ |
| 4. Is anyone proposed for coverage now under medical observation or treatment other than as stated above? | | ☐ ☐ | ☐ ☐ |

REDACTED

Please give details below if you answered "Yes" to any above questions.

| Quest. No. | Name of Person | Details (Name of condition, date of onset, Duration, current treatment and condition, etc.) | Complete Names, Addresses and Phone Numbers of Physicians and Hospitals |
|---|---|---|---|

**REDACTED**

A601007NJW1

# REDACTED

5. PROPOSED INSURED'S  Height _5_ ft _5_ in.  Weight _135_ lbs.  Weight change in past year _∅_ lbs.

6a. PERSONAL PHYSICIAN (if none, state none)
Name: _____  Address _KAISER - CLAIRMONT_

b. Date and reason last consulted: _____

c. Treatment given or medication prescribed: _____

7. PROPOSED INSURED'S FAMILY HISTORY

| | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|
| Father | | | |
| Mother | 58 | 45 | |
| Brothers/Sisters | 37, 35, | | |
| | 32, 31 | | |

To the best of your knowledge and belief, has any member of your family had alcoholism, cancer, diabetes, high blood pressure, or heart disease?  ☐ Yes  ☒ No
If "Yes", give details _____

| SPECIAL REQUESTS | HOME OFFICE USE ONLY |
|---|---|
| BANK Draft 15th Each Month | |

## AUTHORIZATION AND AGREEMENT

I/we, the Proposed Insured(s), authorize any physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insurance or reinsuring company, the Medical Information Bureau, consumer reporting agency or employer, having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of me or my minor children, and any other nonmedical information of me or my minor children, to give to Great American® Life Insurance Company or its legal representative, or its reinsurers any and all such information. I/we also authorize any consumer reporting agency to prepare or procure an investigative consumer report on me or my minor children.

I/we understand the information obtained by use of the authorization will be used by Great American® Life Insurance Company to determine eligibility for insurance and eligibility for benefits under an existing policy. Any information obtained will not be released by Great American® Life Insurance Company to any person or organization EXCEPT to reinsuring companies, the Medical Information Bureau, or other persons or organizations, performing business or legal services in connection with my application, claim, or as may be otherwise lawfully required or as I/we may further authorize.

I/we know I/we may request to receive a copy of this authorization. I/we agree a photographic copy of this authorization shall be as valid as the original. I/we agree this authorization shall be valid for two and one-half years from the date shown below.

I/we, the Proposed Insured(s), represent the statements in Part I and Part II (if Part II is required by the Company) of this application are true and complete to the best of my knowledge and belief. It is agreed: (a) the only statements which are to be considered as the basis of the policy are those contained in the application or in any amendment to the application; (b) any prepayment made with this application will be subject to the provisions of the CONDITIONAL RECEIPT bearing the same date as this application; (c) if there is no prepayment made with this application, the policy will not take effect until the first premium is paid during the lifetime of the proposed insured and while his/her health and the facts and other conditions affecting his/her insurability are as described in Part I and Part II (if Part II Medical is required by the Company) of this application, and until the policy is delivered to the proposed owner; and (d) no one except the President, a Vice President, or the Secretary can make, alter or discharge contracts or waive any of the Company's rights or requirements.

I/we acknowledge receipt of NOTICE OF INSURANCE INFORMATION PRACTICES attached here to and hereby authorize preparation of an investigative consumer report.

NOTICE: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

Date _8/3/98_   City/State _National City_   Signature X _____
Proposed Insured (Parent or Guardian of Proposed Insured is a juvenile under age 15 (18 in PA))

Witness X _____   Signature X _____
Licensed Agent                         Spouse/Additional Insured (if Term Ins is elected)

Printed Name _Cole B. Davis III_   Agent Code _CM007000-4_   Signature X _____
Applicant/Owner if other than Proposed Insured (Give title if signed on behalf of business # )

A 4 01400 7NT W1

## NOTICE

This policy is valuable property. If anyone suggests replacing it, please contact us first to be certain of your rights.

When You write to us, please give us your name, address and policy number. Please notify us promptly of any changes. We will write to You at your last known address.

**GREAT AMERICAN ● LIFE INSURANCE COMPANY**

TERM LIFE INSURANCE TO AGE 95
Insurance payable if the Insured dies while this policy is in force.
Premiums payable while the Insured is alive until the Expiration Date.
This policy is convertible to age 75.
This policy is nonparticipating.

PGRAT97NW1

Exhibit _A_, Pg. _36_



**GREAT AMERICAN®**
LIFE INSURANCE COMPANY

LIFE DIVISION

**Great American® Life Insurance Company**
LIFE DIVISION
P.O. Box 5416
Cincinnati, OH 45201-5416
888-863-5891

Exhibit _A_, Pg. _38_

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY AND ZIP CODE: San Diego, CA 92101 | |
| BRANCH NAME: Central | |
| TELEPHONE NUMBER: (619) 685-6149 | |

| PLAINTIFF(S) / PETITIONER(S): Catherine Beck |
|---|

| DEFENDANT(S) / RESPONDENT(S): Great American Life Insurance Company |
|---|

| BECK VS. GREAT AMERICAN LIFE INSURANCE COMPANY | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>37-2007-00074401-CU-IC-CTL |

Judge: Linda B. Quinn                                    Department: C-74

**COMPLAINT/PETITION FILED: 09/06/2007**

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

---

SDSC CIV-721 (Rev. 11-06)

**NOTICE OF CASE ASSIGNMENT**                                            Page: 1

Exhibit _A_, Pg. 39

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00074401-CU-IC-CTL      CASE TITLE: Beck vs. Great American Life Insurance Company

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

Exhibit **A** , Pg. **40**

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

SDSC CIV-730 (Rev 12-06)

Page 2

Exhibit _A_, Pg. _41_

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:    330 West Broadway | |
| MAILING ADDRESS:    330 West Broadway | |
| CITY, STATE, & ZIP CODE:  San Diego, CA  92101-3827 | |
| BRANCH NAME:    Central | |

PLAINTIFF(S):  Catherine Beck

DEFENDANT(S): Great American Life Insurance Company

SHORT TITLE:   BECK VS. GREAT AMERICAN LIFE INSURANCE COMPANY

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2007-00074401-CU-IC-CTL |
|---|---|

Judge: Linda B. Quinn                                        Department: C-74

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program

☐ Private Neutral Evaluation

☐ Private Mini-Trial

☐ Private Summary Jury Trial

☐ Private Settlement Conference with Private Neutral

☐ Other (specify): _____

☐ Court-Ordered Nonbinding Arbitration

☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Reference to General Referee

☐ Private Reference to Judge

☐ Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____                    Date: _____

Name of Plaintiff                           Name of Defendant

Signature                                   Signature

Name of Plaintiff's Attorney                Name of Defendant's Attorney

Signature                                   Signature

(Attach another sheet if additional names are necessary. It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated:  09/06/2007

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**                    Page: 1

Exhibit _A_, Pg. _42_

**EXHIBIT B**

Arrow

Page 1 of 1

FROM: Vivian Imperial (213)337-4615
CT - Los Angeles SOP Team
818 West Seventh Street

Los Angeles, CA 90017

TO:  **John P Gruber (513)333-5549**
**Annuity Investors Life Insurance Co**
**525 Vine Street, 7th Floor**

**Cincinnati, OH 45202**
Ref: SOP/04139000/612637735/Vivian Imperial



FedEx Revenue Barcode

CAD# 8318649
SHIP DATE: 01OCT07
WEIGHT: 1 LB



DELIVERY ADDRESS (FedEx-EDR)

**STANDARD OVERNIGHT**

**TUE**

TRK # 7982 7538 7127        FORM
0201

**45202**  -OH-US

**A1**

Deliver by:
02OCT07

**CVG**

# XH LUKA

CLS050607

RECEIVED

OCT 0 2 2007

GREAT AMERICAN LIFE INS. CO.
LEGAL DEPARTMENT

Exhibit  _B_ , Pg.  _43_

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
09/29/2007
CT Log Number 512637735

|||||||||||||||||||||||||||||||||||||||||||||

**TO:**   John P Gruber, Asst. VP & Assoc. Gen. Counsel
Annuity Investors Life Insurance Company
525 Vine Street, 7th Floor
Cincinnati, OH 45202-

**RE:**   **Process Served in California**

**FOR:**   GREAT AMERICAN LIFE INSURANCE COMPANY (Domestic State: OH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Catherine Beck, etc., Pltf. vs. Great American Life Insurance Company, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit, Notice(s), Stipulation Form |
| **COURT/AGENCY:** | San Diego County, Superior Court, CA<br>Case # 37200700074401CUICCTL |
| **NATURE OF ACTION:** | Insurance Litigation - Breach of Contract - Failure to pay death benefit - Seeking declaratory relief regarding the respective rights and duties of the parties concerning the policy and specifically the premium payment sent by decedent was timely and the policy was in force so as to provide death benefits to plaintiff as the beneficiary |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/28/2007 at 15:00 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | William E. O'Neil<br>Law Office of William E. O'Neil<br>101 West Broadway<br>Suite 810<br>San Diego, CA 92101<br>619-702-7638 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Standard Overnight , 798275387127 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / VI

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit _B_, Pg. _44_

9-28-07 1:18 P.M.

**SUMMONS**
**(CITACION JUDICIAL)**

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
GREAT AMERICAN LIFE INSURANCE COMPANY, an Ohio
Corporation; and DOES 1-20, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
CATHERINE BECK, an Individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: (El nombre y dirección de la corte es): Superior Court of California, County of San Diego, Hall of Justice 330 West Broadway, San Diego, CA 92101 | CASE NUMBER: (Número del Caso) 37-2007-00074461-CU-IC-CTL |

SEP 6 '07 PM 1:29

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
William E. O'Nell, Esq. (SBN185756), LAW OFFICE OF WILLIAM E. O'NELL
101 West Broadway, Suite 810, San Diego, CA 92101; Tel: (619) 702-7636; Fax: (619) 702-7639

| DATE: SEP 0 6 2007 (Fecha) | Clerk, by WYNNIE S. ABELLA (Secretario) | , Deputy (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): GREAT AMERICAN LIFE INSURANCE, AN OHIO CORPORATION

under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☐ by personal delivery on (date):

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Page 1 of 1 Code of Civil Procedure §§ 412.20, 465 American LegalNet, Inc. | www.USCourtForms.com |

Exhibit _B_, Pg. _45_

**EXHIBIT C**

1    Mitchell J. Popham (126194)
     Susan J. Welde (205401)
2    **LOCKE LORD BISSELL & LIDDELL LLP**
     300 South Grand Avenue, Eighth Floor
3    Los Angeles, CA 90071-3119
     Telephone: 213.485.1500
4    Fax: 213.485.1200

5    Attorneys for Defendant
     **GREAT AMERICAN**
6    **LIFE INSURANCE COMPANY**

7

8

9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10               FOR THE COUNTY OF SAN DIEGO, CENTRAL DISTRICT

11   CATHERINE BECK, an Individual,          )   CASE NO. 37-2007-00074401-CU-IC-CTL
                                             )
12                  Plaintiff,               )   **DEFENDANT GREAT AMERICAN LIFE**
                                             )   **INSURANCE COMPANY'S ANSWER TO**
13          vs.                              )   **COMPLAINT**
                                             )
14   GREAT AMERICAN LIFE INSURANCE           )
     COMPANY, an Ohio Corporation; and DOES 1)  **DEMAND FOR JURY TRIAL**
15   through 20, Inclusive,                  )
                                             )
16                  Defendants.              )

17

18

19          Defendant Great American Life Insurance Company ("GALIC") answers the unverified

20   complaint ("the Complaint") filed by plaintiff Catherine Beck ("Plaintiff") for itself alone and for no

21   other party as follows:

22                                **GENERAL DENIAL**

23          1.      Under the provisions of California Code of Civil Procedure section 431.30, GALIC

24   denies both generally and specifically each and every allegation in the Complaint and the whole

25   thereof and denies specifically that Plaintiff has sustained any injury, loss or damage by reason of

26   any act or omission of GALIC or any of GALIC's agents, servants, employees or affiliates.

27   ///

28   ///                                              **Exhibit _C_, Pg. _46_**

                                                 1
     [DEFENDANT GREAT AMERICAN LIFE INSURANCE COMPANY'S ANSWER TO COMPLAINT]

*(left margin, vertical)* Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

2.     Plaintiff's claims are barred because the Complaint and each and every purported cause of action contained therein fails to state facts sufficient to constitute any cause of action against GALIC.

### SECOND AFFIRMATIVE DEFENSE

#### (Unclean Hands)

3.     Plaintiff is barred from maintaining the Complaint or any purported cause of action contained therein because of Plaintiff's and/or Plaintiff's decedent's misconduct constituting unclean hands.

### THIRD AFFIRMATIVE DEFENSE

#### (Waiver)

4.     Plaintiff's claims are barred because Plaintiff has voluntarily waived her right to maintain the Complaint and each purported cause of action therein by Plaintiff's and/or Plaintiff's decedent's own acts, omissions and/or conduct.

### FOURTH AFFIRMATIVE DEFENSE

#### (Third Party Fault)

5.     Plaintiff's claims are barred because any injury, loss or damage sustained by Plaintiff, if any, was proximately caused by or contributed to by persons or entities other than GALIC, over which GALIC had no authority or control. GALIC cannot be held liable for injury, loss or damage, if any, caused by such independent persons or entities, whether they are parties to this action or not. Therefore, the damages, if any, recoverable by Plaintiff must be diminished in proportion to the fault attributable to such other persons and/or entities.

///

///

///

///

Exhibit _C_, Pg. _47_

2

[DEFENDANT GREAT AMERICAN LIFE INSURANCE COMPANY'S ANSWER TO COMPLAINT]

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

### FIFTH AFFIRMATIVE DEFENSE

#### (Mitigation of Damages)

6.    Plaintiff's claims are barred because Plaintiff has failed to exercise reasonable care and diligence to mitigate her alleged damages. Therefore, any recovery by Plaintiff, if any, should be barred or reduced by her own failure to mitigate.

### SIXTH AFFIRMATIVE DEFENSE

#### (Estoppel)

7.    Plaintiff is barred, estopped and precluded from recovery herein pursuant to the doctrine of equitable estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Lack of Notice)

8.    Plaintiff's claims are barred because Plaintiff failed to give GALIC reasonable notice of any wrongful conduct or damage as alleged in the Complaint.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Superseding Cause)

9.    Plaintiff's claims are barred because the legal fault alleged in the Complaint as to GALIC was not a substantial factor in bringing about the loss and/or damages alleged by Plaintiff and, therefore, was not a contributing cause, but was superseded by the negligence and/or other legal fault of one or more third parties whose conduct was an independent, intervening and sole cause of any alleged injuries or damages purportedly suffered by Plaintiff.

### NINTH AFFIRMATIVE DEFENSE

#### (Laches)

10.    Plaintiff is barred, estopped and precluded from recovery herein pursuant to the doctrine of laches.

///
///
///
///

Exhibit _C_ , Pg. _48_

3

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

11.    Plaintiff's claims are barred in that no acts or omissions to act as alleged against GALIC, or any acts or omissions to act on the part of any persons or entities for whose acts or omissions GALIC is or may have been legally responsible, were a substantial cause or contributed in any manner or to any degree to any losses or damages for which Plaintiff seeks recovery.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Limitations on Joint and Several Liability)

12.    Any damages recoverable by Plaintiff are barred or must be reduced by the limitations on joint and several liability codified in California Civil Code sections 1431-1431.5.

## TWELFTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

13.    Plaintiff's claims are barred to the extent that any party or other entity or person is found to be negligent or otherwise at fault or liable to Plaintiff in this action. The conduct of all such parties, persons or entities must be compared to determine the respective percentage of fault of liability of each such party, person or entity, and GALIC may not be held liable for the percentage of the claimed damages caused or contributed by entities, persons or individuals other than GALIC, whether they are parties to this action or not.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Plaintiff's Fault)

14.    Plaintiff's claims are barred to the extent that any loss, injury, damage or detriment as alleged in the Complaint was caused by or contributed to by Plaintiff's and/or Plaintiff's decedent's negligence and/or other wrongful conduct. Plaintiff's recovery, if any, must be reduced by an amount proportionate to the amount by which Plaintiff's and/or Plaintiff's decedent's negligence and/or other wrongful conduct caused or contributed to any loss, injury and/or damage alleged in the Complaint. GALIC alleges that Plaintiff's proportionate share of fault is one hundred percent (100%).

///

Exhibit _C_ , Pg. _49_

4

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Consent)

15.     Plaintiff's claims are barred to the extent that she and/or Plaintiff's decedent consented to and approved the acts and omissions about which she now complains.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to do Equity)

16.     Plaintiff's claims are barred by reason of Plaintiff's and/or Plaintiff's decedent's failure to do equity in the matters alleged in the Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Illegality)

17.     Plaintiff's claims are barred to the extent that the contract on which Plaintiff seeks to recover is made illegal by California Civil Code section 1668.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

18.     Plaintiff's claims are barred because Plaintiff would be unjustly enriched if allowed to recover on any claim set forth in the Complaint.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Failure of Consideration)

19.     Plaintiff is barred from recovering any damages or other relief by reason of the failure of consideration that defeats the effectiveness of the contract between the parties.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Abandonment of Contract)

20.     Plaintiff's Complaint is barred and fails to state a claim by reason of the provisions of California Civil Code section 1689 concerning abandonment of contracts.

///
///
///
///

Exhibit _C_, Pg. _50_

[DEFENDANT GREAT AMERICAN LIFE INSURANCE COMPANY'S ANSWER TO COMPLAINT]

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

## TWENTIETH AFFIRMATIVE DEFENSE

### (Justification)

21.     Plaintiff's claims are barred both by statute and by common law inasmuch as GALIC was privileged and justified in acting as it did under the circumstances present at the time its actions were undertaken.  Accordingly, GALIC cannot be liable for Plaintiff's damages, if any.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Failure To Satisfy Condition Precedent)

22.     Plaintiff's claims are barred to the extent that Plaintiff's and/or Plaintiff's decedent's failure to satisfy one or more conditions precedent resulted in no valid contract being formed between Plaintiff's decedent and GALIC.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Vexatious Complaint)

23.     Plaintiff's Complaint was not brought in good faith and is frivolous.  As a result, GALIC, pursuant to California Code of Civil Procedure section 128.7, is entitled to and will seek reasonable expenses including attorney's fees and costs incurred in defending this action.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Assumption of the Risk)

24.     Plaintiff's claims are barred to the extent that any loss, injury, damage or detriment alleged in the Complaint was caused or contributed to by the actions of Plaintiff and/or Plaintiff's decedent in voluntarily encountering known risks of harm and proceeding to do the acts and things alleged in the Complaint, and the assumption of said risks by her, knowing said risks caused or contributed to the loss, injury, damage or detriment alleged in the complaint.  GALIC alleges that the loss, injury, damage or detriment purportedly suffered by Plaintiff associated with Plaintiff's assumption of the risk is one hundred percent (100%).

///

///

///

///

Exhibit _C_, Pg. _51_

6

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Statutes of Limitations)

25.    Plaintiff's claims are barred to the extent that Plaintiff failed to comply with any applicable statutes of limitation including, but not limited to, those set forth in California Code of Civil Procedure sections 312, 335, 337, 339, 340, 343, 473 and 474.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Performance)

26.    Plaintiff's claims are barred pursuant to California Civil Code section 1473, *et seq.* because GALIC has fully performed any and all obligations owed to Plaintiff.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Breach of Contract)

27.    If any contract between Plaintiff and/or Plaintiff's decedent and GALIC existed, Plaintiff and/or Plaintiff's decedent breached the contract by, among other things, failing to perform obligations under the alleged contract competently and satisfactorily.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (No Damages)

28.    Plaintiff suffered no damages proximately caused by any alleged acts or omissions of GALIC.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Particularity)

29.    Plaintiff has not set out her claims with sufficient particularity to permit GALIC to raise all appropriate defenses. Accordingly, GALIC reserves the right upon completion of its investigation and discovery to add such further defenses as may be appropriate when the factual basis for the Complaint, if any, become known.

///

///

///

///

Exhibit _C_, Pg. _52_

7

THEREFORE, GALIC prays:

1.    That Plaintiff take nothing by way of the Complaint;

2.    That the Complaint be dismissed against GALIC and that Judgment be entered in favor of GALIC;

3.    That GALIC be awarded its costs of suit and attorney's fees to the extent that they are recoverable; and,

4.    That GALIC be awarded such further relief as this court may deem just and proper.

Dated: October 26, 2007

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP

By: _Susan Welde_
Mitchell J. Popham
Susan J. Welde
Attorneys For Defendant **GREAT AMERICAN LIFE INSURANCE COMPANY**

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

Exhibit _C_, Pg. _53_

8

[DEFENDANT GREAT AMERICAN LIFE INSURANCE COMPANY'S ANSWER TO COMPLAINT]

STATE OF CALIFORNIA        )
COUNTY OF LOS ANGELES    ) ss.

# PROOF OF SERVICE

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. On October 26, 2007, I served the foregoing document described as:

**DEFENDANT GREAT AMERICAN LIFE INSURANCE COMPANY'S ANSWER TO COMPLAINT DEMAND FOR JURY TRIAL**

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service. (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list).

    **BY PERSONAL SERVICE.** I placed __ the original or __ a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties on the attached service list, and caused such envelope to be delivered by hand to the offices of each addressee.

    **BY FACSIMILE TRANSMISSION.** I caused __ the original or __ a true copy of the foregoing document to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

  **X**  **BY MAIL.** I placed __ the original or **X** a true copy of the foregoing document in a sealed envelope individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. Each envelope was mailed with postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that is it collected in the ordinary course of business.

    **BY E-MAIL.** I caused the foregoing document(s) to be transmitted by e-mail electronic transmission to the e-mail address on the attached service list as last given by that person on any document which he or she has filed in this action and served upon this office.

    **BY EXPRESS MAIL.** I placed __ the original or __ a true copy of the foregoing document in a sealed envelope individually addressed to each of the parties on the attached service list, and caused such envelope or package to be deposited in the mail at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. Each envelope was mailed with Express Mail postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

    **BY FEDERAL EXPRESS.** I placed __ the original or __ a true copy of the foregoing document in a sealed envelope or package designated by Federal Express with delivery fees paid or provided for, individually addressed to each of the parties on the attached service list, and caused such envelope or package to be delivered at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119, to an authorized courier or driver authorized by Federal Express to receive documents.

  **X**  **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **(Federal)** I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

Executed on October 26, 2007, at Los Angeles, California.

GRISELDA MAYORGA

**Exhibit C , Pg. 54**

**BECK v. GREAT AMERICAN LIFE INSURANCE COMPANY**
San Diego Superior Court Case No.: 37-2007-00074401-CU-IC-CTL

<u>Service List</u>

**Attorney for Plaintiff CATHERINE BECK**

William E. O'Nell, Esq.
LAW OFFICE OF WILLIAM E. O'NELL
101 West Broadway, Suite 810
San Diego, California 92101
Tel:    619.702.7636
Fax:    619.702.7639

Exhibit <u>C</u>, Pg. <u>SS</u>

STATE OF CALIFORNIA          )                    **PROOF OF SERVICE**
COUNTY OF LOS ANGELES        )  ss.

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. On October 29, 2007, I served the foregoing document described as:

### NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 (b)
### DEMAND FOR JURY TRIAL

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service. (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list).

    **BY PERSONAL SERVICE.** I placed __ the original or __ a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties on the attached service list, and caused such envelope to be delivered by hand to the offices of each addressee.

    **BY FACSIMILE TRANSMISSION.** I caused __ the original or __ a true copy of the foregoing document to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

**X**    **BY MAIL.** I placed __ the original or **X** a true copy of the foregoing document in a sealed envelope individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. Each envelope was mailed with postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that is it collected in the ordinary course of business.

    **BY E-MAIL.** I caused the foregoing document(s) to be transmitted by e-mail electronic transmission to the e-mail address on the attached service list as last given by that person on any document which he or she has filed in this action and served upon this office.

    **BY EXPRESS MAIL.** I placed __ the original or __ a true copy of the foregoing document in a sealed envelope individually addressed to each of the parties on the attached service list, and caused such envelope or package to be deposited in the mail at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. Each envelope was mailed with Express Mail postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

    **BY FEDERAL EXPRESS.** I placed __ the original or __ a true copy of the foregoing document in a sealed envelope or package designated by Federal Express with delivery fees paid or provided for, individually addressed to each of the parties on the attached service list, and caused such envelope or package to be delivered at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119, to an authorized courier or driver authorized by Federal Express to receive documents.

    **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**X**    **(Federal)** I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

Executed on October 29, 2007, at Los Angeles, California.

_____
GRISELDA MAYORGA

**BECK v. GREAT AMERICAN LIFE INSURANCE COMPANY**

<u>Service List</u>

**Attorney for Plaintiff CATHERINE BECK**

William E. O'Nell, Esq.
LAW OFFICE OF WILLIAM E. O'NELL
101 West Broadway, Suite 810
San Diego, California 92101
Tel:      619.702.7636
Fax:      619.702.7639

**BY FAX**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CATHERINE BECK | GREAT AMERICAN LIFE INSURANCE COMPANY, and DOES 1 through 20 |

FILED

2007 OCT 29 PM 3:08

| (b) County of Residence of First Listed Plaintiff San Diego, CA<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Hamilton, OH<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number)<br>William E. O'Nell, Esq.<br>Law Office of William E. O'Nell<br>101 West Broadway, Suite 810<br>San Diego, CA 92101<br>(619) 702-7636 | Attorneys (If Known)<br>Mitchell J. Popham/Susan J. Welde<br>Locke Lord Bissell & Liddell LLP<br>300 South Grand Avenue, Suite 800<br>Los Angeles, CA 90071<br>(213) 485-1500 |

BY
DEPUTY

**07 CV 2055 JM    POR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Breach of contract, filing under 28 USC §§ 1332 and 1441(b).

Brief description of cause:
Breach of contract. Plaintiff alleges non-payment of insurance benefits.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $250,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)    JUDGE None Known    DOCKET NUMBER None Known

DATE
October 29, 2007

SIGNATURE OF ATTORNEY OF RECORD
Susan Welde

FOR OFFICE USE ONLY

RECEIPT # 143808    AMOUNT $350    APPLYING IFP 100 10/27/0    JUDGE _____    MAG. JUDGE _____

American LegalNet, Inc.    www.USCourtForms.com

JS 44 Reverse (Rev. 11/04)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    (b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: <u>47 USC 553</u>
                                       Brief Description: <u>Unauthorized reception of cable service</u>

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

American LegalNet, Inc. | www.USCourtForms.com

STATE OF CALIFORNIA     )                      **PROOF OF SERVICE**
COUNTY OF LOS ANGELES  )  ss.

        I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. On October 29, 2007, I served the foregoing document described as:

### CIVIL COVER SHEET

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service. (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list).

        **BY PERSONAL SERVICE.** I placed __ the original or __ a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties on the attached service list, and caused such envelope to be delivered by hand to the offices of each addressee.

        **BY FACSIMILE TRANSMISSION.** I caused __ the original or __ a true copy of the foregoing document to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

  X    **BY MAIL.** I placed __ the original or _X_ a true copy of the foregoing document in a sealed envelope individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. Each envelope was mailed with postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that is it collected in the ordinary course of business.

        **BY E-MAIL.** I caused the foregoing document(s) to be transmitted by e-mail electronic transmission to the e-mail address on the attached service list as last given by that person on any document which he or she has filed in this action and served upon this office.

        **BY EXPRESS MAIL.** I placed __ the original or __ a true copy of the foregoing document in a sealed envelope individually addressed to each of the parties on the attached service list, and caused such envelope or package to be deposited in the mail at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119. Each envelope was mailed with Express Mail postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

        **BY FEDERAL EXPRESS.** I placed __ the original or __ a true copy of the foregoing document in a sealed envelope or package designated by Federal Express with delivery fees paid or provided for, individually addressed to each of the parties on the attached service list, and caused such envelope or package to be delivered at 300 South Grand Avenue, Eighth Floor, Los Angeles, CA 90071-3119, to an authorized courier or driver authorized by Federal Express to receive documents.

        **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  X    **(Federal)** I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

Executed on October 29, 2007, at Los Angeles, California.

GRISELDA MAYORGA

**BECK v. GREAT AMERICAN LIFE INSURANCE COMPANY**

Service List

**Attorney for Plaintiff CATHERINE BECK**

William E. O'Nell, Esq.
LAW OFFICE OF WILLIAM E. O'NELL
101 West Broadway, Suite 810
San Diego, California 92101
Tel:     619.702.7636
Fax:     619.702.7639

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 143808    − KD**

**October 29, 2007
15:13:01**

**Civ Fil Non-Pris**
USAO #.: 07CV2055
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 CK
Check#.: BC 63779

**Total−>    $350.00**

FROM: CIVIL FILING
      BECK V. GREAT AMERICAN LIFE
      INS. CO, ET AL